UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBORAH ANN ARNOLD,<br><br>               Plaintiff,<br><br>      v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security,<br><br>               Defendant. | Case No. EDCV 10-1609 JC<br><br>MEMORANDUM OPINION |

## I. SUMMARY

On October 20, 2010, plaintiff Deborah Ann Arnold ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have consented to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; October 26, 2010 Case Management Order, ¶ 5.

///

Based on the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED. The findings of the Administrative Law Judge ("ALJ") are supported by substantial evidence and are free from material error.

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On June 12, 2007, plaintiff filed an application for Disability Insurance Benefits. (Administrative Record ("AR") 10, 97-99). Plaintiff asserted that she became disabled on February 23, 2007, due to plexiform neurofibroma; tumors. (AR 130). The ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert on August 26, 2009. (AR 21).

On November 2, 2009, the ALJ determined that plaintiff was not disabled through the date of the decision. (AR 19). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments: degenerative disc disease and neurofibroma (AR 12); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal one of the listed impairments (AR 13); (3) plaintiff retained the residual functional capacity to perform a full range of sedentary work (20 C.F.R. § 404.1567(a)) (AR 13); (4) plaintiff could not perform her past relevant work (AR 18); (5) there are jobs that exist in significant numbers in the national economy that plaintiff could perform, specifically medical receptionist (AR 19); and (6) plaintiff's allegations regarding her limitations were not credible to the extent they were inconsistent with the ALJ's residual functional capacity assessment (AR 18).

The Appeals Council denied plaintiff's application for review. (AR 1).

## III. APPLICABLE LEGAL STANDARDS

### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that she is unable to engage in any substantial gainful activity by reason of a medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit her ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

(4) Does the claimant possess the residual functional capacity to perform her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

(5) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

1          The claimant has the burden of proof at steps one through four, and the
Commissioner has the burden of proof at step five. Bustamante v. Massanari, 262
F.3d 949, 954 (9th Cir. 2001) (citing Tackett); see also Burch, 400 F.3d at 679
(claimant carries initial burden of proving disability).

   **B.     Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of
benefits only if it is not supported by substantial evidence or if it is based on legal
error. Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir.
2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457
(9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable
mind might accept as adequate to support a conclusion." Richardson v. Perales,
402 U.S. 389, 401 (1971) (citations and quotations omitted). It is more than a
mere scintilla but less than a preponderance. Robbins, 466 F.3d at 882 (citing
Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must
"'consider the record as a whole, weighing both evidence that supports and
evidence that detracts from the [Commissioner's] conclusion.'" Aukland v.
Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d
953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming
or reversing the ALJ's conclusion, a court may not substitute its judgment for that
of the ALJ. Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

## IV.   DISCUSSION

### A.    The ALJ Properly Evaluated Plaintiff's Credibility

#### 1.    Pertinent Law

An ALJ is not required to believe every allegation of disabling pain or other
non-exertional impairment. Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007)
(citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). If the record establishes
the existence of a medically determinable impairment that could reasonably give

4

rise to symptoms assertedly suffered by a claimant, an ALJ must make a finding as to the credibility of the claimant's statements about the symptoms and their functional effect. Robbins, 466 F.3d 880 at 883 (citations omitted). Where the record includes objective medical evidence that the claimant suffers from an impairment that could reasonably produce the symptoms of which the claimant complains, an adverse credibility finding must be based on clear and convincing reasons. Carmickle v. Commissioner, Social Security Administration, 533 F.3d 1155, 1160 (9th Cir. 2008) (citations omitted). The only time this standard does not apply is when there is affirmative evidence of malingering. Id. The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004).

To find the claimant not credible, an ALJ must rely either on reasons unrelated to the subjective testimony (*e.g.*, reputation for dishonesty), internal contradictions in the testimony, or conflicts between the claimant's testimony and the claimant's conduct (*e.g.*, daily activities, work record, unexplained or inadequately explained failure to seek treatment or to follow prescribed course of treatment). Orn, 495 F.3d at 636; Robbins, 466 F.3d at 883; Burch, 400 F.3d at 680-81; SSR 96-7p. Although an ALJ may not disregard such claimant's testimony solely because it is not substantiated affirmatively by objective medical evidence, the lack of medical evidence is a factor that the ALJ can consider in her credibility assessment. Burch, 400 F.3d at 681.

Questions of credibility and resolutions of conflicts in the testimony are functions solely of the Commissioner. Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006). If the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

### 2. Analysis

Plaintiff contends that the ALJ inadequately evaluated the credibility of her subjective complaints (*i.e.*, pain from her impairments and the side effects from the medication used to treat them). (Plaintiff's Motion at 5-7, 9-17). The Court disagrees.

First, an ALJ may properly discount the credibility of a claimant's subjective complaints to the extent they are inconsistent with the claimant's daily activities and other abilities. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (inconsistency between the claimant's testimony and the claimant's conduct supported rejection of the claimant's credibility); Verduzco v. Apfel,188 F.3d 1087, 1090 (9th Cir. 1999) (inconsistencies between claimant's testimony and actions cited as a clear and convincing reason for rejecting the claimant's testimony). Here, as the ALJ pointed out, plaintiff's work history is inconsistent with her allegations of disabling pain. For example, although plaintiff was diagnosed with neurofibroma in August 2005, and in November 2005 plaintiff began treatment with the University of Michigan Center for Interventional Pain Medicine ("University of Michigan Center"), she continued working until February 23, 2007, her alleged onset date. (AR 15, 30, 137, 174, 175). In progress notes dated February 16, 2007, doctors from the University of Michigan Center stated "[plaintiff] currently is working the night shifts . . . as a nurse in the neonatal intensive care unit." (AR 157). The record also reflects that in October 2007 plaintiff sold Mary Kay cosmetics for a brief period. (AR 30-31, 217). The ALJ reasonably found "[t]he fact that [plaintiff] had previously worked with her impairment, when her symptoms were at approximately the same level of severity as presently reported . . . suggests that [plaintiff's] impairment would not [] prevent work." (AR 15).

As the ALJ also pointed out, plaintiff's daily activities are "[not as limited as] one would expect, given [plaintiff's] complaints of disabling symptoms and

limitations." (AR 16). Plaintiff's Function Report – Adult dated June 23, 2007, reflects that plaintiff had no difficulty with personal care, was able to prepare simple meals, wash dishes, do laundry, drive, attend church, visit family and friends, watch television, read, use the computer and go out unaccompanied. (AR 16, 108-12). In addition, in a June 1, 2007 treatment report, plaintiff's treating physicians at the University of Michigan Center noted that plaintiff "walks 2-3 times a week" and "tries to do periodic pool exercises."[1] (AR 152). While plaintiff suggests that such activities "[do] not in any way detract from [plaintiff's] credibility," this Court will not second-guess the ALJ's reasonable interpretation that they do. Rollins, 261 F.3d at 857.

Second, the ALJ could properly discount plaintiff's subjective complaints due to internal conflicts within plaintiff's own statements and testimony. See Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir.), as amended (1997) (in weighing plaintiff's credibility, ALJ may consider "inconsistencies either in [plaintiff's] testimony or between his testimony and his conduct"); see also Fair, 885 F.2d at 604 n.5 (9th Cir.1989) (ALJ can reject pain testimony based on contradictions in plaintiff's testimony). As the ALJ pointed out, plaintiff's statement in her Function Report that her concentration was impaired conflicted with her statement that she could pay attention "for a long time." (AR 113). In addition, plaintiff testified at the hearing that she stopped attending church "[a] couple years ago" because it was "too hard to sit," (AR 38), yet in her Function Report plaintiff stated that she attends church regularly, and the evidence reflects that in May 2009 plaintiff was baptized at her church. (AR 38, 112, 242). As noted above, in her application materials plaintiff stated that she had ceased working on the alleged onset date (*i.e.*, February 23, 2007), but plaintiff testified at

---

[1] "She does state[] that she currently walks slowly and it takes approximately 1 hour to walk 1 mile." (AR 152).

7

the hearing, and told her doctors that in October 2007 she sold Mary Kay cosmetics. (AR 15, 30-31, 137, 217). In addition, contrary to plaintiff's allegation that she suffers from disabling pain, University of Michigan Center treatment records note a number of occasions where plaintiff reported that her pain was "overall well controlled," that plaintiff was "doing well" with her medication, and that she had even been able to reduce her medication. (AR 15, 188, 195, 197, 205, 208, 211, 214, 217, 242). In May 2009 plaintiff reported that significant walking during her baptismal ceremony did not create problems with pain. (AR 15-16, 242). Although plaintiff recognized that she was unable to continue working as a nurse, she told her physicians that she was "hoping to find a better job that would suit her medical condition." (AR 153, 221, 227). The ALJ reasonably concluded that plaintiff's professed ability and interest in finding suitable work was inconsistent with her allegations of total disability. (AR 15).

Third, the ALJ properly discredited plaintiff based on plaintiff's "generally unpersuasive appearance and demeanor while testifying at the hearing." See Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001) ("In assessing the claimant's credibility, the ALJ may use 'ordinary techniques of credibility evaluation' . . . .").

Fourth, an ALJ may discredit a plaintiff's subjective symptom testimony in part based on conflicts with objective medical evidence. See Burch, 400 F.3d at 681; Rollins, 261 F.3d at 857 ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.") (citation omitted). Here, the ALJ stated that examinations of plaintiff were "relatively normal." (AR 15). For example, as the ALJ noted, progress notes dated March 23, 2007, reflect that on physical exam plaintiff had "normal range of motion in [her] back," and only a "moderate amount of tenderness to deep palpation over the left lumbosacral region." (AR 15, 156).

8

On August 24, 2007, an examination of plaintiff at University of Michigan Center showed that she had a "normal gait," and although plaintiff "move[d] very slowly secondary to pain," she still had full strength in her lower extremities. (AR 15, 222). A May 21, 2009 examination showed that plaintiff was walking unassisted and "without a limp or [] altered gait," and that plaintiff had movement of in all four extremities bilaterally "without any sort of sensory deficits on either side." (AR 16, 242). As the ALJ also noted, treatment records do not corroborate plaintiff's allegations that she experiences "various side effects" from her medications. (AR 16). For example, in their May 21, 2009 report, plaintiff's treating doctors at the University of Michigan Center stated that "[Plaintiff] denie[d] any sort of side effects from the medications." (AR 242). The Court will not, as plaintiff urges, second guess the ALJ's reasonable interpretation of the medical evidence.

Finally, the ALJ gave "slight weight" to the fact that "[plaintiff] betrayed no evidence of pain or discomfort while testifying at the hearing." (AR 16). The ALJ was permitted to rely on her own observations of plaintiff at the hearing as one of several factors affecting plaintiff's credibility. See Drouin v. Sullivan, 966 F.2d 1255, 1259 (9th Cir. 1992) (upholding credibility rejection where ALJ's observation of claimant at the hearing was one of several legitimate reasons stated); see also Verduzco, 188 F.3d at 1090 (ALJ's reliance on observations of claimant proper where ALJ pointed to plaintiff's affirmative exhibition of symptoms which were inconsistent with both medical evidence and plaintiff's other behavior and did not point to the absence of the manifestation of external symptoms to discredit plaintiff, referring to the latter as disapproved "sit and squirm" jurisprudence).

Accordingly, a remand or reversal on this basis is not warranted.

///
///

**B. The ALJ Properly Evaluated the Opinions of Plaintiff's Treating Physician**

**1. Pertinent Law**

In Social Security cases, courts employ a hierarchy of deference to medical opinions depending on the nature of the services provided. Courts distinguish among the opinions of three types of physicians: those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," namely those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("nonexamining physicians"). Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (footnote reference omitted). A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion.[2] See id. In general, the opinion of a treating physician is entitled to greater weight than that of a non-treating physician because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).

The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989)). Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons. Orn, 495 F.3d at 632 (citation and internal quotations omitted). The ALJ

---

[2] Cf. Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to draw bright line distinguishing treating physicians from non-treating physicians; relationship is better viewed as series of points on a continuum reflecting the duration of the treatment relationship and frequency and nature of the contact) (citation omitted).

can reject the opinion of a treating physician in favor of another conflicting medical opinion, if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. Id. (citation and internal quotations omitted); Thomas, 278 F.3d at 957 (ALJ can meet burden by setting out detailed and thorough summary of facts and conflicting clinical evidence, stating his interpretation thereof, and making findings) (citations and quotations omitted); Magallanes, 881 F.2d at 751, 755 (same; ALJ need not recite "magic words" to reject a treating physician opinion – court may draw specific and legitimate inferences from ALJ's opinion). "The ALJ must do more than offer his conclusions." Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988). "He must set forth his own interpretations and explain why they, rather than the [physician's], are correct." Id. "Broad and vague" reasons for rejecting the treating physician's opinion do not suffice. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989).

Although the treating physician's opinion is generally given more weight, a nontreating physician's opinion may support rejecting the conflicting opinion of a claimant's treating physician. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). If a nontreating physician's opinion is based on independent clinical findings that differ from the findings of the treating physician, the nontreating physician's opinion may be considered substantial evidence. Id. at 1041 (citing Magallanes, 881 F.2d at 751). If that is the case, then the ALJ has complete authority to resolve the conflict.[3] On the other hand, if the nontreating physician's opinion contradicts the treating physician's opinion but is not based on independent clinical findings, or is based on the clinical findings also considered by the treating physician, the ALJ can only reject the treating physician's opinion

---

[3] Where there is conflicting medical evidence, the Secretary must assess credibility and resolve the conflict. Thomas, 278 F.3d at 956-57.

11

by giving specific, legitimate reasons based on substantial evidence in the record. Id. (citation omitted); see Magallanes, 881 F.2d at 751-52 (Substantial evidence that can support the conflicting opinion of a nonexamining medical advisor can include: laboratory test results, contrary reports from examining physicians, and testimony from the plaintiff that is inconsistent with the treating physician's opinions.).

### 2. Pertinent Facts

On July 19, 2007, a non-examining, state-agency physician reviewed plaintiff's medical records and completed a Physical Residual Functional Capacity Assessment form which reflects that plaintiff: (i) could lift and/or carry 20 pounds occasionally, and 10 pounds frequently; (ii) could stand and/or walk about six hours in an eight-hour workday; (iii) could sit about six hours in an eight-hour workday; (iv) could frequently balance, and occasionally climb, stoop, kneel, crouch and crawl; and (v) should avoid even moderate exposure to vibration and hazzards (*e.g.*, machinery, heights). (AR 177-84).

On July 1, 2009, Dr. Katherine French, a treating physician, completed a Physical Residual Functional Capacity Questionnaire and a Clinical Assessment of Pain form for plaintiff ("July 1 reports"), in which Dr. French opined that plaintiff: (i) experienced chronic pain, insomnia and depression from neurofibromatosis of the lumbar plexus; (ii) could not sit for more than 10 minutes, stand for more than 15 minutes, or sit/stand/walk for more than a total of two hours out of an eight-hour workday; (iii) needed to be able to shift positions at will from sitting, standing or walking every 30 minutes; (iv) should have her legs elevated with prolonged sitting; (v) must use a cane or other assistive device while standing or walking; (vi) cannot lift or carry any amount of weight;[4] (vii) could never twist,

---

[4] Dr. French did not indicate whether plaintiff could lift or carry less than 10 pounds. (AR 253). The ALJ interpreted this to mean that Dr. French believed plaintiff was unable to lift or carry any amount of weight. (AR 17).

12

stoop, bend, crouch/squat, or climb ladders or stairs; (viii) would need to be absent from work as a result of plaintiff's impairments and treatment for more than four days per month; (ix) experienced dizziness and fatigue as a side effect of her medication, and due to such medication plaintiff was "unable to function at a productive level [at work]"; and (x) was essentially unable to do any work due to her pain and symptoms (collectively "Dr. French's opinions"). (AR 251-55).

### 3. Analysis

Plaintiff contends that the ALJ improperly evaluated Dr. French's opinions. (Plaintiff's Motion at 3-4). The Court concludes that a remand or reversal is not warranted on this basis because the ALJ properly rejected Dr. French's opinions for specific and legitimate reasons supported by substantial evidence.

First, the ALJ properly rejected Dr. French's opinions because they were not supported by the physician's own notes, by plaintiff's statements or the record as a whole. See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) (citation omitted); Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (treating physician's opinion properly rejected where treating physician's treatment notes "provide no basis for the functional restrictions he opined should be imposed on [the claimant]"); Tonapetyan, 242 F.3d at 1149 (ALJ need not accept treating physician's opinions that are conclusory and brief, or unsupported by clinical findings, or physician's own treatment notes). As the ALJ noted and as discussed above, medical records show that physical examinations of plaintiff were, on the whole, "relatively normal." (AR 15-16, 156, 222, 242). As the ALJ also observed, the few treatment notes that Dr. French personally prepared for plaintiff do not substantiate the doctor's opinion that plaintiff is essentially unable to work. (AR 17, 229-33). To the extent plaintiff argues that Dr. French's opinions are substantiated by treatment records from the University of Michigan Center (which plaintiff suggests Dr. French considered while preparing the July 1 reports), such argument is belied by the record. For example, in the July 1 reports Dr. French

13

stated that "clinical findings and objective signs" showed plaintiff with "decreased range of motion" and tumors on her nerves, and that due to "incapacitating" pain, plaintiff required a cane or other assistive device to stand or walk, and plaintiff was effectively precluded from all work. (AR 251-55). In contrast, the report of a physical examination of plaintiff conducted by University of Michigan Center physicians less than three months earlier (*i.e.* April 9, 2009), reflected that plaintiff had a normal gait, was able to walk unassisted, and had full movement in all four of her extremities without sensory deficits. (AR 16, 242). The same report reflects that plaintiff told her doctors that she was "pain free" at that time, and that while she continued to have pain when it rained or was cold outside, "overall she [felt] much better." (AR 242), cf. Magallanes, 881 F.2d at 751-52 (ALJ may properly reject a medical opinion that is inconsistent with a plaintiff's demonstrated abilities).

Second, the ALJ properly rejected Dr. French's opinions in favor of the conflicting opinions of the state-agency reviewing physician – which found no limitations beyond those already accounted for in the ALJ's residual functional capacity assessment. (AR 17, 177-84). The opinions of the state-agency reviewing physician are consistent with findings from plaintiff's University of Michigan Center doctors as well as the other evidence in the record, and therefore constitute substantial evidence supporting the ALJ's rejection of Dr. French's opinions. See Tonapetyan, 242 F.3d at 1149 (holding that opinions of nontreating or nonexamining doctors may serve as substantial evidence when consistent with independent clinical findings or other evidence in the record); Andrews, 53 F.3d at 1041 ("reports of the nonexamining advisor need not be discounted and may serve

///
///
///
///

as substantial evidence when they are supported by other evidence in the record and are consistent with it").[5]

Accordingly, a remand or reversal on this basis is not warranted.

## C. The ALJ Properly Considered Plaintiff's Residual Functional Capacity

Plaintiff argues that the ALJ failed properly to assess plaintiff's residual functional capacity, essentially because (1) the ALJ did not include all limitations related to plaintiff's medically determinable impairments[6]; (2) the ALJ failed properly to evaluate plaintiff's credibility;[7] and (3) the ALJ failed adequately to account for "[plaintiff's] medication side effects, difficulties with prolonged

---

[5]Plaintiff argues that the record lacks evidence to support the ALJ's rejection of Dr. French's notes which stated that plaintiff could not return to her prior work because the opinions expressed in such notes were formed out of sympathy for plaintiff. (Plaintiff's Motion at 23) (citing AR 17). The Court finds that the alleged error, if any, was harmless because the remaining reasons identified by the ALJ for discrediting Dr. French's opinions are supported by substantial evidence, and because the ALJ's finding was irrelevant to the ultimate disability determination since the ALJ concluded that plaintiff was unable to perform any past relevant work. See Sawyer v. Astrue, 303 Fed. Appx. 453, 455 (9th Cir. 2008) (error in ALJ's failure properly to consider medical opinion evidence considered harmless "where the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion. . . .") (citing Stout, 454 F.3d at 1055); see also U.S. Ct. App. 9th Cir. Rule 36-3(b); Fed. R. App. P. 32.1(a) (courts may cite unpublished Ninth Circuit opinions issued on or after January 1, 2007).

[6]Plaintiff contends that the ALJ's residual functional capacity assessment fails properly to account for limitations related to plaintiff's "significant tumors throughout [her] lower abdomen, pelvis, left hip and left thigh with peripheral nerve root involvement" and limitations related to plaintiff's subjective complaints (*i.e.*, that she has difficulty with prolonged sitting, standing and walking, and decreased concentration as a side effect from medication). (Plaintiff's Motion at 22). Plaintiff argues that the residual functional capacity assessment should have included a sit/stand at will option and "a limitation to simple, routine repetitive tasks not requiring a centered focus or concentration" – limitations that appear to be drawn from Dr. French's opinions. (Plaintiff's Motion at 23; see AR 251, 253, 255).

[7]Plaintiff asserts that the ALJ's decision "failed to provide a detailed discussion of why [plaintiff's] reported symptom-related functional limitations could not reasonably be accepted . . . ." (Plaintiff's Motion at 23).

15

sitting and multiple bad days each month" documented in Dr. Green's medical records for plaintiff. (Plaintiff's Motion at 22-23). The Court disagrees.

First, to the extent this claim is predicated on items 1 and 2 above, it is derivative of plaintiff's other claims and fails for the reasons discussed above.

Second, with respect to item 3, contrary to plaintiff's assertion, the ALJ addressed medical records from Dr. Green as part of her detailed discussion of plaintiff's treatment at the University of Michigan Center where Dr. Green was one of plaintiff's physicians. (AR 15-16; see, e.g., AR 154, 194, 243). The decision specifically noted that the ALJ reviewed University of Michigan Center records for plaintiff "from the alleged onset date forward." (AR 15). While the ALJ may not have expressly referenced particular cumulative symptom evidence, this does not mean that the ALJ failed to consider such evidence. See Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]"). The ALJ was not required to discuss every piece of evidence. See Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (citations omitted).

Moreover, plaintiff fails to demonstrate that the subjective complaints allegedly documented by Dr. Green (*i.e.*, "medication side effects, difficulties with prolonged sitting and multiple bad days") constitute significant or probative evidence that is not already accounted for in the ALJ's residual functional capacity assessment. An ALJ must provide an explanation only when she rejects "significant probative evidence." See Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted). Here, plaintiff does not point to any determination by Dr. Green that the alleged subjective complaints caused plaintiff any significant functional limitations. To the contrary, as discussed above, the ALJ concluded that overall University of Michigan Center records showed that plaintiff's examinations were "relatively normal," that plaintiff's pain was "overall well controlled" by her medication, and that plaintiff's allegations of medication

side effects were unsupported by the record. (AR 15-16). Although plaintiff suggests that such evidence does reflect significant functional limitations, this Court will not second-guess the ALJ's reasonable determination that it does not, even if such evidence could give rise to inferences more favorable to plaintiff. Rollins, 261 F.3d at 857.

In short, the ALJ's residual functional capacity assessment is supported by substantial evidence and is free from material error.

## V. CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: June 8, 2011

                                                      /s/
                          Honorable Jacqueline Chooljian
                          UNITED STATES MAGISTRATE JUDGE